```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-2-10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x

UNITED STATES OF AMERICA,                    :

                        -v-                  :           09 Cr. 347 (JSR)

                                             :

ANTHONY BOYD,                                :           OPINION AND ORDER

                                             :

                        Defendant.           :
---------------------------------------- x

JED S. RAKOFF, U.S.D.J.

      Defendant Anthony Boyd moves pursuant to Rule 33 of the

Federal Rules of Criminal Procedure for a new trial, following his

conviction by a jury on November 30, 2009 of 2 counts of bank

robbery, 12 counts of armed bank robbery, and one count of escape.

Although most of the issues raised in Boyd's motion -- such as his

contention that the Government's DNA expert gave "fraudulent"

testimony, see Motion for A New Trial at 3 -- are both factually

baseless and without legal merit, the Court construes his motion,

drafted pro se,[1] to also re-raise the contention made by his

assisting counsel at trial: that allowing the Government's DNA expert

to testify, with the assistance of business records, to the results

of preliminary steps performed by others earlier in the testing chain

---

      [1] Very shortly before trial, Boyd, after running through
   three court-appointed attorneys, decided to represent himself pro
   se at trial.  Nevertheless, the Court required his last appointed
   counsel, Andrew G. Patel, Esq., to assist Boyd at trial to the
   extent Boyd desired and, in fact, Boyd utilized Patel's services
   extensively, most particularly with respect to the Melendez-Diaz
   issue here raised.  See Trial Transcript ("Tr."), 11/23/09, at
   749, 756-803.

that formed part of the basis for the DNA expert's final analysis and conclusion, contravened Boyd's Sixth Amendment right to confrontation as most recently elucidated by the Supreme Court in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009).

In Melendez-Diaz, the Court held that it was reversible error for the trial court to receive in evidence, over objection, the sworn certificates of state laboratory analysts that indicated the amount and type of narcotics seized by police from the defendant.  The certificates, the Court held, were the functional equivalent of the in-court testimony that the analysts would have provided had they appeared at trial, and since, instead of live testimony, only the paper certificates were offered, the defendant was deprived of his constitutional right to meaningful cross-examination.  Id. at 2532. See Davis v. Washington, 547 U.S. 813, 830 (2006); Crawford v. Washington, 541 U.S. 36, 51-52 (2004).  Rejecting concerns raised by the dissent, however, the majority in Melendez-Diaz did not hold that introduction of forensic evidence obliges the prosecution to call as a witness every individual whose testimony may be relevant to every aspect of the forensic chain.  Rather, the Court left open such questions for further development.  Id. at 2532 n.1.

The instant case thus raises, in effect, one of the issues adverted to but left open by the majority in Melendez-Diaz: if (as here) the expert witness who takes the stand made the final

determination as to the DNA match, and in so doing, relied on the

results of tests performed by other members of the lab, does the

failure to call the analysts who conducted the preliminary tests

infringe the defendant's right under the Confrontation Clause?[2]

The indictment in this case charged Boyd with committing a

series of bank robberies, most of them armed, between December 2008

and July 2009.  Although an eye-witness to one of the robberies

identified Boyd as the culprit, in most cases the robber wore a mask

that made him difficult to identify.  The Government therefore relied

on other evidence, most of which was quite strong, including Boyd's

confession on March 25, 2009 to all but one of the robberies.[3]  Among

much else, the Government introduced as to two of the robberies DNA

evidence that linked defendant to various articles -- two beebee guns

and some items of clothing -- that were left at the scene of those

---

[2] Other courts have acknowledged this potential issue left
open by Melendez-Diaz but have not yet addressed it directly.
See, e.g., United States v. Rose, No. 08-10813, 2009 U.S. App.
LEXIS 24473 (5th Cir. Nov. 6, 2009) (affirming defendant's
conviction where the lab supervisor, who had reviewed the drug
analysis report but did not perform the test, testified in
court); Pendergrass v. State, 913 N.E.2d 703 (Ind. 2009)
(rejecting Sixth Amendment challenge where laboratory supervisor
who had knowledge of processing testified but technician did
not); see also United States v. Darden, No. 09-602M, 2009 U.S.
Dist. LEXIS 94982 (D. Md. Sept. 24, 2009) (upholding admission of
toxicology report where supervising toxicologist who reviewed
data and reported conclusion testified at trial); Rector v.
State, 681 S.E.2d 157 (Ga. 2009) (affirming conviction where
trial court allowed toxicologist to testify about report prepared
by another doctor as harmless because it did not contribute to
verdict).

[3] The jury acquitted as to that robbery.

two robberies.  To introduce this evidence, the Government called as

a witness the DNA analyst who initially prepared the evidence for

testing and who personally handled the final step of a four-step

process in DNA analysis, but who did not perform the other three

steps.[4]  Defendant, through his assisting counsel, contended that

failure to call the analysts responsible for the earlier stages in

the forensic process abridged his rights under the Sixth Amendment,

and he moved to strike the expert witness's testimony.  The Court

concluded that, in the circumstances of this case, defendant's

Confrontation Clause right to confront witnesses against him was

satisfied, and therefore denied his motion.

Even DNA testing, though providing the "gold standard" for

forensic testing, is not immune from error or falsification, see

NATIONAL RESEARCH COUNCIL OF THE NATIONAL ACADEMIES, STRENGTHENING FORENSIC SCIENCE

IN THE UNITED STATES: A PATH FORWARD 130-33 (2009), and, thus, even if the

overall error rate in properly conducted DNA testing is extremely

low, a defendant must be given, consistent with the mandates of the

Constitution, a reasonable opportunity to determine through cross-

examination if any such error or falsification is present in any DNA

testing admitted into evidence.  That opportunity cannot be

---

[4] The four stages of DNA testing, according to the
Government's witness, are "extraction," "quantitation,"
"amplification," and "determination of a DNA profile."  See tr.,
11/23/09 at 756-57.  In addition to preparing the evidence to
undergo these tests and personally handling the final step, the
witness personally witnessed the technician performing the third
step.  Tr., 11/23/09, at 715, 730, 792.

boundless, however.  If, on the one hand, a technician's role at any stage involves a material exercise of judgment or analysis, then a defendant's inability to cross-examine the witness on the results obtained from that exercise may rise to an injury of constitutional magnitude.  But if, as here, the DNA testing in its preliminary stages requires the technician simply to perform largely mechanical or ministerial tasks, then, absent some reason to believe there was error or falsification, the need to call such a technician as a witness may not become a constitutional necessity.

Here, Boyd's assisting counsel speculated that each technician at each stage was called upon to engage in non-ministerial analyses and on that basis argued that each step was critical to the final determination of a DNA profile that linked defendant to the crime and that defendant's Confrontation Clause rights were abridged when he was deprived of the opportunity to question each of the technicians personally.  Tr., 11/24/09, at 913-14.  But neither Boyd nor his assisting counsel sought a "Daubert" or other hearing on these contentions, nor adduced anything other than speculation to support these suggestions, and the expert's testimony at trial flatly refuted these claims.

Specifically, the DNA expert, although admitting that he did not personally witness several of the intervening steps, testified in detail about the routine procedures involved at each step and the ministerial nature of those steps, which he himself had performed

5

thousands of time.  See tr., 11/23/09, at 758-99, 845-49.  The
witness also testified that the process included several safeguards
to enable the technicians to detect any errors that could potentially
produce a false positive DNA match, and that none of those internal
controls signaled any error in this case.  Id. at 765, 774-75, 803.
Finally, he testified that the reports of the intervening analysts
were reviewed at the end of the process for technical accuracy.  Id.
at 713.

     This testimony established, first, that the intervening steps
were performed on the basis of established procedures that allowed
little to no discretion; second, that the testifying expert was
himself familiar with these intervening procedures and could be fully
cross-examined as to their efficacy, accuracy, etc.; and, third, that
the intervening technicians were, if anything, less able to respond
to questions about the intervening procedures than the more expert
witness who was actually called to the stand.[5]

     Only the final stage of the DNA testing involved the type of
analytical judgment for which a certificate would be an inadequate
substitute for in-court testimony under the Sixth Amendment.  But
this was precisely where the Government provided live testimony in

---

     [5] It should also be noted that defendant made no attempt to
subpoena the analysts who performed tasks at the intermediary
stages.  Although this failure was not, in this Court's view, a
waiver of defendant's Sixth Amendment argument, it may be a
relevant part of the "mix" that the Court may consider in
determining whether, as a practical matter, defendant was
deprived of his Sixth Amendment right of confrontation.

the form of the expert who performed this step.   The DNA expert

testified in some detail as to how he had determined that the DNA

profiles from the firearms and clothing recovered from the two bank

robberies matched one other, and thus came from a single source, and,

furthermore, how he had determined that the DNA profile from that

source matched the DNA profile derived from defendant's buccal swab.[6]

Id. at 732-33, 741, 743, 744-46.   The witness further provided the

basis for his assertion that the DNA profile would be found in only

one of one trillion individuals, id. at 730, 744, and that, because

the DNA typing was duplicated and the results were confirmed, no

false positive had been produced, id. at 851.   The defendant was

given ample opportunity to cross-examine this witness on his

methodology and conclusions, and, thus, in the Court's view, the

defendant's Sixth Amendment right to confrontation was preserved.

See tr., 11/24/09, at 914-15.[7]

_____

[6] On June 23, 2009, defendant consented to give a DNA sample
(Gov't Ex. 1805).   Tr., 11/20/09, at 614-15.

[7] In his motion for a new trial, Boyd further contends that
the DNA expert manipulated the data when he made a minor revision
to the report in conformity with the laboratory's guidelines.
See Def. Rule 33 Mot. at 2, Ex. B.   However, the report itself
indicates that the changes did not affect any of the expert's
conclusions, and the expert so testified as well.   See tr.,
11/23/09, at 825-26, 832.   Boyd had an opportunity to cross-
examine the witness on this aspect of the report and was unable
to marshal any additional support for his far-fetched
speculation.   The Court concludes, therefore, that any contention
that the DNA expert "manipulated" the data is meritless.

The limits of <u>Melendez-Diaz</u> are still being developed.  The Court here holds only that where the defendant had ample opportunity to confront the Government witness who undertook the final, critical stage of the DNA analysis, and where that witness was personally familiar with each of the prior steps, testified that the analysis included safeguards to verify that errors would not result in a false positive, and demonstrated that the prior steps were essentially mechanical in nature, the Confrontation Clause is satisfied.

Accordingly, the Court hereby denies defendant's motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a new trial.  The Clerk of the Court is directed to close document 32 on the docket of the case.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        March 1, 2010

8